UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SABRINA SPIGER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICES, INC.,<br><br>Defendant. | 4:15-CV-04110-KES<br><br><br>ORDER REMANDING CASE |

**INTRODUCTION**

Plaintiff, Sabrina Spiger, filed this pro se lawsuit in the Small Claims
Court of Hughes County, South Dakota. Docket 1-1. Defendant removed the
case to this court and now moves to dismiss for lack of jurisdiction. Docket 1;
Docket 4. For the reasons stated below, this case is remanded, and defendant's
motion to dismiss is denied.

**FACTUAL BACKGROUND**

UPS employed Spiger from January 20, 2014 to April 6, 2015. Docket 7
at ¶ 2. She worked both as a counter clerk and as part of UPS's air operation.
*Id.* The terms and conditions of Spiger's employment were governed by the
"National Master United Parcel Service Agreement" and "Teamsters Central
Region and United Parcel Service Supplemental Agreement to the National
Master United Parcel Service Agreement" (together, hereinafter "the CBA"). *Id.*
at 5; Docket 7-1.

On March 25, 2015, Spiger filed a grievance complaining that someone changed her hours and that she was not paid for all the time she had worked. Docket 7-1 at 52. She claimed this was a violation "of contract and the laws of the state." *Id*. She requested "to be paid for all time/pay as well as penalty, taken away pay from me resulting in lost wages and for practice to cease immediately." *Id*. During the grievance hearing, Spiger resigned. *Id*. She also allegedly told UPS she would "see [it] in court." Docket 7 at ¶7.

Spiger filed this claim on May 7, 2015 in Small Claims Court in Hughes County. Docket 1-1. She described her claims as "DEBT OWED FOR LOST WAGES IN AIRTIME @ $11.50 HR . . . PLUS LOST WAGES ON TIME CLOCK REGULAR HOURS." *Id*. The only law she cites in her complaint is SDCL 60-11-7, which states "In any action for the breach of an obligation to pay wages, if a private employer has been oppressive, fraudulent, or malicious, in the employer's refusal to pay wages due to the employee, the measure of damages is double the amount of wages for which the employer is liable." *Id*. She claims punitive damages under this statute. *Id*.

Defendant removed the case to this court based on federal question jurisdiction. Docket 1 at ¶11. Defendant argues, "Federal question jurisdiction exists in this case based on the complete preemption of Plaintiff's claims by Section 301 of the Labor Management Relations Act ('LMRA' or 'Act'), 29 U.S.C. § 185(a), because Plaintiff's claims will necessarily require interpretation of the CBA." *Id*. Defendant argues that because Spiger cites a statute that provides for punitive damages when " 'a private employer has been oppressive,

2

fraudulent, or malicious, in the employer's refusal to pay wages due to the employee[,]' . . . the CBA is critical in determining what amount of wages are due to an employee." *Id.* at ¶12-13.

The CBA covers issues of wages, hours, and records as well as grievance and arbitration procedures. Defendants supplied the National Master United Parcel Service Agreement portion of the CBA. Docket 7-1. Article 8 discusses the grievance procedure. *Id.* at 3. "All grievances and/or questions of interpretation arising under the provisions of this [CBA] shall be submitted to the grievance procedure for determination." *Id.* Article 8, section 3 states, "If the Master Panel is unable to reach agreement, then either party may appeal the issue presented to final and binding arbitration." *Id.* at 6.

Article 12 provides:

Upon request, an employee or the Union may inspect the record of an employee's time recorded on the DIAD or other device for previous days' work. An employee will be permitted to examine the operation record for the current pay period for the purpose of ascertaining his/her hours worked. If an employee has an issue with his/her hours worked for a particular day, the Employer will provide the employee, upon written request, with a print out of his/her hours worked.
The Employer shall not alter the information from the DIAD board, or information recorded through the use of any other technology, so as to diminish an employee's compensable time, without the employee's knowledge. Further, the Employer shall post for an employee's review, a copy of the PTE edits for each day.

*Id.* at 11.

Article 17 provides:

All employees covered by this Agreement shall be paid for all time spent in service of the Employer. Rates of pay provided for by this Agreement shall be minimums. Time shall be computed from the

3

time that the employee is ordered to report for work and registers in and until the employee is effectively released from duty.

*Id.* at 12.

Article 22, section 5 lays out the wage structure for part time employees. *Id.* at 18. Article 40, section 6 regulates the part-time air drivers wages. *Id.* at 26. Article 41 regulates full-time employees' wages. *Id.* at 36.

Defendant also provided the Teamsters Central Region and United Parcel Service Supplemental Agreement portion of the CBA. Docket 7-1. Article 5, section 1 states: "The Union and the Employer agree that there shall be no . . . legal proceedings without first using all possible means of a settlement, as provided for in this Agreement . . . ." *Id.* at 39. This section defines a grievance as "any controversy, complaint, misunderstanding, or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement . . . ." *Id.* Section 1 also details the grievance procedure. *Id.* at 40-42.

Article 8, section 1 states: "All regular employees covered by this Agreement shall be paid in full each week." *Id.* at 43. Article 9 regulates time sheets and time clocks. *Id.* at 44. It states:

> The Employer shall provide and require the employee to keep a time sheet or trip card showing the arrival and departure at centers or hubs . . . and same shall be turned in at the end of each trip. . . . In all delivery operations, a daily time record shall be maintained by the Employer at its place of business.

*Id.*

4

Article 11 regulates part-time employees. Section 3 states: "It is understood these employees shall be paid the appropriate rate of pay for all hours which [sic] they perform such work." *Id.* at 46. Article 12 regulates weekly work schedules and overtime pay. *Id.* at 47-50.

Defendant now moves to dismiss this action for failure to state a claim because Spiger's claims are preempted by § 301 of the LMRA and for lack of subject matter jurisdiction because she failed to exhaust her remedies in the grievance process. Docket 5 (citing Fed. R. Civ. P. 12(b)(1), (6)).

## LEGAL STANDARD

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

## DISCUSSION

The Eighth Circuit Court of Appeals has not analyzed the § 301 preemption doctrine as applied to a wage claim, but it analyzed the § 301 preemption doctrine generally in *Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009). District courts within the Eighth Circuit have applied that analysis to wage claims. Other circuits have ruled directly on § 301 preemption

5

as applied to wage claims. These circuits found similar claims both preempted and not preempted, although a majority held these claims preempted.

## I.     Eighth Circuit Analysis

In *Williams*, the Eighth Circuit analyzed § 301 preemption. Professional football players tested positive for a substance banned under the CBA and were suspended. *Id.* at 870. The players sued the NFL in state court alleging numerous violations of Minnesota common law. *Id.* at 872. The state court issued a temporary restraining order blocking the suspension. *Id.* The NFL removed the case to federal district court. *Id.* The players then initiated a separate action in federal court against the NFL and the NFL Management Council alleging breach of contract under § 301. *Id.* An amended complaint added a claim for violation of Minnesota's Drug and Alcohol Testing in the Workplace Act (DATWA) and Minnesota's Consumable Products Act (CPA). *Id.*

The district court found that the Minnesota statutory claims were not preempted by § 301 but the common law claims "were preempted by section 301 such that they must be construed as section 301 claims." *Id.* at 873. The district court then dismissed the § 301 claims. Because the federal claims were all dismissed, the district court held that the Minnesota state court should resolve the state-law claims and declined to exercise supplemental jurisdiction over those claims. *Id.* at 872. Both parties appealed. *Id.* at 868.

The Eighth Circuit first considered the state-law claim under DATWA. *Id.* at 874. Defendants argued that the court would need to interpret the CBA in order to determine whether the procedure the NFL used in testing met or

exceeded the protections provided by DATWA. *Id.* at 875. The court found that "Section 301 preempts state-law claims that are 'substantially dependent upon analysis[] of a CBA . . . .'" *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). "However, the [United States Supreme] Court has established that section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job." *Id.* " '[T]he Supreme Court has distinguished those which require interpretation or construction of the CBA from those which only require reference to it.' " *Id.* at 876 (quoting *Trustees of Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006)). "In sum, section 301 does not preempt every employment dispute, and it does not preempt all other disputes concerning CBA provisions." *Id.* at 877 (citing *Miner v. Local 373*, 513 F.3d 854, 865 (8th Cir. 2008)).

The Eighth Circuit applies "a two-step approach in order to determine if the claim is sufficiently 'independent' to survive section 301 preemption . . . ." *Id.* at 874.

> First, a 'state-law claim is preempted if it is "based on" [a] ... provision of the CBA[,]' meaning that '[t]he CBA provision at issue' actually sets forth the right upon which the claim is based. Second, section 301 preemption applies where a state-law claim 'is "dependent upon an analysis" of the relevant CBA,' meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA.

*Id.* (quoting *Bogan v. Gen. Motors Corp.*, 500 F.3d 828, 832 (8th Cir. 2007)).

Applying the two-part test to the DATWA claim, the court found that DATWA added a new claim that an employee could bring if the employer fell

below the DATWA standards. *Id.* at 875-76. There would be no need to consult the CBA to resolve the DATWA claim. *Id.* at 876. The court would merely "compare the facts and the procedure that the NFL actually followed with respect to its drug testing of the Players with DATWA's requirements for determining if the Players are entitled to prevail." *Id.*

With respect to the common law claims, plaintiffs sought recovery on multiple grounds under the theory that once defendants knew the product contained a banned substance, defendants had a duty to the players to disclose this. *Id.* at 881. The players argued that these claims involved "purely factual questions about the NFL's conduct and did not require interpretation of any provision of the CBA" and that this duty existed independently from the CBA. *Id.*

The court, however, found that the breach of fiduciary duty, negligence, and gross negligence claims were preempted because "whether the NFL or the individual defendants owed the Players a duty to provide such a warning cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy." *Id.* The misrepresentation claims were preempted because "the Players [could not] demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA . . . ." *Id.* The court would have to determine whether the language in the CBA was ambiguous enough for plaintiffs to reasonably believe the substance was not banned because of the lack of warning. *Id.* at 882 (quoting *Trustees*, 450 F.3d at 332). The intentional infliction of emotional

8

distress claim was preempted because the court could only determine the outrageousness of the NFL's conduct in light of what was agreed to in the CBA. *Id.*

Thus, to determine whether the state-law claims are sufficiently independent to survive § 301 preemption, the district court must apply the two-part test articulated in *Williams*.

## II.    Analysis of District Court Decisions Within the Eighth Circuit

In its memorandum in support of its motion to dismiss, UPS states, "Other courts have specifically held that state-law wage claims are preempted under the LMRA." Docket 5 at 10. Numerous district courts in the Eighth Circuit have interpreted *Williams* and analyzed whether wage claims are preempted by § 301. The majority have found that the claims are not preempted. These cases, discussed below, as well as the circuit court opinions which follow, interpret both defensive preemption raised in support of motions to dismiss and complete preemption raised in support of motions to remand or remove under the same two-step *Williams* standard explained above. *Williams* concerned defensive preemption.

The courts do not explain the analytical difference between types of preemption and generally analyze the claims the same way. But "[r]emoval cases are construed more narrowly than originally filed cases to protect the plaintiff's choice of forum and to protect the state courts from usurpation by federal courts." *Hewitt v. Gerber Products Co.*, No. 2:13-CV-02117, 2013 WL 5786089, at *1 (W.D. Ark. Oct. 28, 2013) (citing *Shamrock Oil & Gas Corp. v.*

*Sheets*, 313 U.S. 100, 108–09 (1941); *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992). "The Court must strictly construe the federal removal statute and resolve any ambiguities about federal jurisdiction in favor of remand." *Id.* (citing *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)). Given this strict construction, if an argument to dismiss based on § 301 preemption is rejected, it should support a motion to remand.

In *Navarro v. Am. Nat. Skyline Inc. of Mo.*, 998 F. Supp. 2d 833 (E.D. Mo. 2014), plaintiffs brought suit in state court against their employer for unpaid wages. Plaintiffs alleged that they worked full shifts, worked overtime, and accumulated work expenses, and defendants refused to pay them all of the wages they were due. *Id.* at 835. Defendants removed the case to federal district court. *Id.* In federal court, plaintiffs moved to remand arguing that they were only seeking "wages, overtime and other expenses," and interpretation of the CBA was not necessary to resolve their claim. *Id.*

The district court applied the two-step analysis outlined in *Williams*. With respect to the first step, the court found that plaintiffs' claim was based on the Missouri Wage Act (MWA), not the CBA. *Id.* at 837. In the second step, the court found the claim not preempted. Defendants, like UPS, argued that the CBA governed the parties' "rights and responsibilities with respect to hours worked, wages, overtime," etc. *Id.* The court, however, held that these provisions would only be relevant to compute damages. *Id.* "Reference to the CBA for this limited purpose[] does not support preemption." *Id.* (citing *Livadas*

10

*v. Bradshaw*, 512 U.S. 107, 124–25 (1994)). The court also stated that it "would not properly consult the CBA in order to resolve the plaintiffs' MWA claim." *Id.* at 838. It would only compare the facts "with the requirements of the MWA to determine whether the state statute had been violated." *Id.*

In *Dyke v. Hormel Foods Corp.*, No. 3:11-CV-03029-JAJ, 2012 WL 113738 (N.D. Iowa Jan. 13, 2012), plaintiffs sued their employer in state court for a violation of the Iowa Wage Payment Collection Law (IWPCL). Defendants removed the case to federal court and moved to dismiss. *Id.* at *1. Plaintiffs alleged that they were not paid for hours worked, including overtime, in violation of the IWPCL. *Id.* Although not clear, the case seems to concern the "donning and doffing" of necessary protective gear and the employer's refusal to compensate employees for this time.

The court applied the two-step preemption analysis outlined in *Williams*. *Id.* at *4-5. The court found that plaintiffs' claim was not "premised on a right provided by the CBA." *Id.* at *5. The claim sought unpaid wages under the IWPCL, which "is designed to facilitate the collection of wages owed to employees." *Id.* (citing *Jeanes v. Allied Life Ins. Co.*, 300 F.3d 938 (8th Cir. 2002)). Thus, the claim was not preempted under the first prong.

Hormel argued that "the CBA governs plaintiffs' and defendants' rights and responsibilities with respect to hours worked, wages, and overtime, and mandates binding arbitration to resolve disputes over its meaning and application" and that the claim was preempted because it would require interpretation of these provisions. *Id.* The court stated that these provisions

11

were only relevant to compute damages. *Id.* Like the court in *Navarro*, the court in *Dyke* found that it "would not properly consult the CBA in order to resolve the plaintiffs' IWPCL claim." *Id.* at *6. It would only "compare the facts as developed with the requirements of the IWPCL to determine whether the state statute had been violated." *Id.* Because the claim was based on Iowa law and defendants' conduct rather than the CBA, the claim was not preempted and the court denied the motion to dismiss. *Id.*

In *Dunn v. Dubuque Glass Co.*, 870 F. Supp. 2d 654 (N.D. Iowa 2012), plaintiffs filed a complaint in Iowa state court claiming their employer failed to pay their correct "sector wages" and failed to pay for overtime in violation of the IWPCL. *Id.* at 659, 661-62. Defendants paid employees different wages based on where they worked. *Id.* at 661. The plaintiffs also brought claims under the LMRA and the Fair Labor Standards Act. *Id.* at 659. Defendants removed the case to federal court. *Id.* The court found it had subject matter jurisdiction based on the federal-law claims and exercised supplemental jurisdiction over the IWPCL claims. *Id.* at 660.

The court found the IWPCL claims preempted by § 301. "The IWPCL states that '[a]n employer shall pay all wages due its employees.' " *Id.* at 668 (quoting Iowa Code section 91A.3). The court analyzed the claim under the two-step approach outlined in *Williams*. Plaintiffs cited *Dyke* and argued that their claims were not preempted. *Id.* Defendants argued that that plaintiffs' right to sector wages was created by the CBA. *Id.* at 669. The court agreed, finding this case distinguishable from *Dyke* because plaintiffs did not argue

12

they were not paid for all the hours they worked but rather that they were not paid enough for work done in specific sectors. *Id.* The right to a certain wage based on a "sector" was derived solely from the CBA. *Id.* Thus, the claim fulfilled the first prong of the preemption test. *Id.*

The court also held that plaintiffs fulfilled the second prong because their IWPCL claims required interpretation of the CBA. *Id.* This claim was not one where the court referenced the CBA only to compute damages. Instead, the court needed to interpret the "sector wages provisions of the Agreement to determine whether Plaintiffs are entitled to particular wages in different locations." *Id.* Thus, plaintiffs' claims fulfilled the second prong of the preemption test. *Id.*

The court held, however, that plaintiffs' overtime claims were not preempted. *Id.* Plaintiffs had a statutory right to overtime pay independent of the CBA. *Id.* at 667, 669. This " 'claim [was] based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers[,]' " which could not be abridged by the CBA. *Id.* at 667 (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 737 (1981)). The court found that the CBA would only be relevant to the issue of damages. *Id.* This did not support preemption. *Id.*

In *Hewitt v. Gerber Products Co.*, No. 2:12-CV-02152, 2012 WL 5410753 (W.D. Ark. Nov. 6, 2012), plaintiffs sued their employer in state court for unpaid wages under the Arkansas Minimum Wage Act and unjust enrichment. This case concerned compensation for time spent "donning and doffing"

13

necessary gear before and after work. *Id.* at *1. Plaintiffs also alleged they were sometimes forced to work through lunch breaks. *Id.* Defendants removed the case to federal court. *Id.* Plaintiffs moved to remand. *Id.* The court found the claims were not preempted and remanded the case to state court. *Id.* at *9.

The court applied the two-step approach outlined in *Williams*. In analyzing the first step, the court found both claims to be based on Arkansas state law rather than the CBA. *Id.* at *4. Defendants failed to point to a provision of the CBA that was at issue. *Id.* The donning and doffing issue was raised and rejected during CBA negotiations. *Id.* Because the CBA was silent on the issue, the court held there was no provision of the CBA that needed to be interpreted. *Id.*

The court also stated that "[e]ven if the CBA were to address compensation for the disputed time periods, Plaintiffs' claims arise independently under state law and are therefore not completely preempted." *Id.* The claims were based on laws granting all employees a right to compensation for time worked. *Id.* Plaintiffs argued that this time includes donning and doffing, and defendants disagreed. *Id.* Thus, the "ultimate issue is whether or not Plaintiffs are entitled to compensation for those activities under state law, regardless of what is provided under the CBA." *Id.* Put another way, "Plaintiffs do not seek a determination as to the appropriate wage under the CBA; they seek to recover wages allegedly due under state statutory and common law." *Id.* at *5. The court held that the matter was more properly decided by a state court and granted the motion to remand. *Id.* at *5-6.

14

Other district courts within the Eighth Circuit have held that wage claims are preempted by § 301. UPS cites to *Zupancich v. U.S. Steel Corp.*, No. CIV 08-5847 ADM/RLE, 2009 WL 1474772 (D. Minn. May 27, 2009) to support this position. Zupancich sued his employer in state court for a violation of the Minnesota Fair Labor Standards Act (MFLSA). He alleged that U.S. Steel did not pay him for the time between swiping-in at the security gate and arriving at his work station. *Id.* at *1. U.S. Steel removed the case to federal court and moved to dismiss based on preemption. *Id.*

The court found that the state-law claims were preempted. This order was issued before *Williams* and does not analyze the state-law claims under the two-step test articulated in *Williams*. The court explained that it "must determine whether a claim asserting [an individual] right could be resolved on its merits without resort to the terms of the CBA." *Id.* at *3. The court found that it could not. *Id.* "[T]he MFLSA specifically anticipates that employees may bargain collectively with their employers to establish wages and conditions of work more favorable to the employees than those required under the MFLSA." *Id.* (citing Minn. Stat. § 177.35). Therefore, the language of the statute itself required the court to examine the CBA to determine whether the parties' negotiated conditions of work were more favorable than those under the MFLSA. *Id.* The court found the claim was not independent of the CBA and therefore it was preempted. *Id.*

In *Walz v. United Parcel Serv., Inc.*, No. 8:13CV250, 2013 WL 6061977 (D. Neb. Nov. 15, 2013), an employee sued UPS in state court alleging a

15

violation of the Nebraska Wage Payment and Collection Act (NWPCA) and seeking unpaid wages. *Id.* at *1. "The NWPCA requires employers to pay former employees any 'unpaid wages' within a certain period of time following separation." *Id.* at *2; Neb. Rev. Stat. §§ 48-1228 – 48-1234. UPS removed the action to federal court. *Id.* at *1. The district court found the claim preempted. *Id.* at *2. The court held that Walz's claim was " 'inextricably intertwined' with consideration of the terms of the CBA" because whether he had "any right to payment from UPS under the NWPCA will substantially depend on an interpretation of the CBA." *Id.* The court denied Walz's remand request.

As illustrated by the cases above, district courts in the Eighth Circuit analyze the application of § 301 preemption to state-law wage claims on a case by case basis. To determine whether a claim is preempted, a district court must determine whether it is premised on a right provided by the CBA or by state-law, and whether it is sufficiently independent of the CBA. Although the CBA inherently governs the rights and responsibilities of management and labor, state laws also affect that relationship. District courts determine whether the CBA must be interpreted to resolve the claim, recognizing that referencing the CBA merely to compute damages is not sufficient to support preemption.

### III.   Other Circuits' Analysis

Other circuits have directly analyzed the application of § 301 preemption to state-law wage claims. In wage claim cases, the circuits disagree as to whether certain state-law claims are independent of CBAs. "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require

16

such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001).

Ninth Circuit cases demonstrate this case-by-case analysis. *Cf. Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003) (holding that claims for overtime were "entirely based on state law" and not preempted even though CBA governed wages and overtime); *with Firestone v. S. California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000) (holding that because different rates of pay were determined by the CBA, it was impossible to determine whether plaintiffs' rights had been violated without interpretation of the CBA).

In other circuits, state-law wage claims have been held preempted. *See, e.g., In Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95 (4th Cir.) *cert. denied*, 135 S. Ct. 160 (2014) (holding state-law claim for wages for time spent donning and doffing protective gear, etc. preempted because plaintiffs only disagreed with defendant's "interpretation of how to calculate their 'hours worked' under the CBA"); *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1 (1st Cir. 2012) (holding a state-law wage claim preempted because it relied on amount of wages provided in the CBA even if those amounts were altered or enlarged by state law and "various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA" needed to be applied and construed to resolve minimum wage claims); *Mowry v. United Parcel Serv.*, 415 F.3d 1149 (10th Cir. 2005) (holding a state-law wage claim preempted because the court would have to resolve issues regulated by the CBA such as what work plaintiff performed and when, whether he was paid or underpaid, and the amount of

17

the shortfall to resolve the complaint); *Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003) (holding a claim that an employer violated state statutory and common law by taking commissions for returned shoes out of employee's pay check was preempted when plaintiff directly challenged the legality of the provision of the CBA discussing return charges.); *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495 (7th Cir. 1996) (holding a state-law claim that employer failed to pay wages due within ten days preempted because the wages were based on the ratification date of the CBA and the CBA need to be interpreted to determine that date).

The Third Circuit has found wage claims not preempted. *See, e.g., New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297 (3d Cir. 2014) (holding a claim that employer did not pay plaintiffs fringe benefits as required by statute was not preempted because it was premised on an independent state-law created right).

These cases show other circuits use the same fact-intensive approach as district courts in the Eighth Circuit. As the Seventh Circuit explained, "[Some] circuits require [a] case-by-case analysis of the state-law claim as it relates to the CBA. As one would expect in case-by-case analysis, in some situations preemption is found and in others it is not." *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 289 (7th Cir. 2001). A case-by-case approach is necessary because each claim is brought under the laws of different states or different CBAs. This court uses this fact specific approach when applying the two-part test found in *Williams*.

18

### IV.    Spiger's Claim Is Not Preempted by § 301

Spiger's complaint is extremely short. The only law she cites to support her claim to recover wages is SDCL 60-11-7, which authorizes an award of double damages to employees who were denied pay by private employers that engaged in oppressive, fraudulent, or malicious conduct. Docket 1-1. Thus, the statute implies an obligation to pay wages. South Dakota Codified Laws Title 60, chapter 11 dictates a scheme of "Wages, Hours, and Conditions of Employment." The provisions relevant to the present case are the minimum wage provisions and SDCL 60-11-7. As explained, SDCL 60-11-7 does not create an obligation to pay wages, but its language necessarily assumes that such an obligation exists. South Dakota law also guarantees a minimum wage of eight dollars and fifty cents an hour, SDCL 60-11-3, and that a person paid less than the minimum wage "shall be entitled to recover the full amount measured by said minimum wage and costs, notwithstanding any agreement to work for less." SDCL 60-11-4. Under South Dakota law, employees are entitled to be paid for their work.

Under the first prong of the preemption test in *Williams*, the court must determine whether Spiger's state-law claim is based on a provision of the CBA or if the CBA provision sets forth the right upon which the claim is based. *Williams*, 582 F.3d at 874. Spiger does not mention the CBA in her complaint. She claims she was not paid for hours that she worked, a right she is guaranteed by South Dakota law. Therefore, the first prong of the preemption test found in *Williams* is not met.

19

Under the second prong, the court must determine whether Spiger's state-law claim is dependent upon analysis of the CBA or requires interpretation of a provision in the CBA. *Id.* UPS points to numerous provisions in the CBA which govern the wages and hours of employees and argues that the CBA provisions must be interpreted to decide Spiger's claim. Docket 5. UPS does not, however, explain why these provisions must be interpreted. Spiger has a right to be paid for her work under South Dakota law. This right is not granted by the CBA. Because this right is independent of the CBA and Spiger claims damages under this right, there is no need to interpret the CBA to determine the merit of her claim.

The CBA does not grant Spiger the right to be paid for her work. It is true that it provides, "All employees covered by this Agreement shall be paid for all time spent in service of the Employer." Docket 7-1 at 12. This provision, however, is not the basis for Spiger's right to be paid for her work. This argument implies UPS employees could negotiate to *not* be paid for their work even though South Dakota law forbids this. This argument has been rejected by the Supreme Court: "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Lueck*, 471 U.S. at 212.

The wage amounts in the complaint do not need to be interpreted to determine the merits of Spiger's claim. The complaint seeks the wage amounts of $10.50 and $11.50 per hour. Docket 1-1 at 2. The CBA describes for what type of work the hourly rates are available. Docket 7-1. UPS argues that the

20

court must interpret the CBA because these wage levels are dictated by the CBA. Docket 5 at 9. The CBA provisions, however, are only necessary for purposes of calculating damages. The right to be paid a wage under South Dakota law is distinct from the right to be paid a *certain* wage under a CBA. Thus, a claim for the right to be paid a wage is independent of the CBA. UPS does not offer a reason why the CBA provisions providing these wages must be interpreted. It also does not offer a possible interpretation of these wage amounts that would affect the court's analysis. The wages levels are stated in the CBA, but the heart of this matter is whether Spiger was paid at all for hours she worked. This is not sufficient to preempt her claims.

This case is distinguishable from the cases in which courts found a state-law wage claim preempted. The particularity of the "sector" wages in *Dunn* is not present here. Spiger does not argue that she is entitled to a certain wage for doing certain work, only that she was not paid at all. This claim is " 'based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers[,]' " which cannot be abridged by a CBA. *Dunn*, 870 F. Supp. 2d at 667 (quoting *Barrentine*, 450 U.S. at 737). Like *Hewitt*, the "ultimate issue" is whether Spiger is entitled to any wage for the contested hours. The CBA is only referenced for damages.

The issue in *Zupancich* is not present. Zupancich brought his claim under a state law which "specifically anticipate[d]" that employees may negotiate better conditions of employment. *Zupancich*, 2009 WL 1474772 at *3. Here, the South Dakota statutes do not contain this language. It is also legally

immaterial whether UPS employees negotiated a wage higher than the minimum wage because Spiger claims she was not paid at all. The bargained for wage is only relevant to the factual issue of calculating damages.

*Zupancich* was decided before *Williams* and does not use the two-step test that other courts use. *Walz* also does not apply this test, and the discussion in *Walz* relevant to this case is short and perfunctory.

Cases from other circuits do not offer a clear rule of law to provide guidance in this matter. While a majority of courts have held state-law wage claims preempted, not all have, and at least the Seventh and Ninth have expressly stated that preemption must be analyzed on a case-by-case basis. In the Eighth Circuit, most district courts have found claims similar to Spiger's not preempted under precedent controlling in this court.

## V.    Remand

In its notice of removal, UPS cites only § 301 preemption as a basis of jurisdiction. Docket 1 at ¶11. This court determines Spiger's claims are not preempted. "A federal court has jurisdiction to consider its own subject matter jurisdiction." *Robins v. Ritchie*, 631 F.3d 919, 930 (8th Cir. 2011). All doubts about federal jurisdiction must be resolved in favor of remand. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1192 (8th Cir. 2015) (quoting *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009)). Under 28 U.S.C. 1447(c), when a case is removed improperly due to a lack of subject matter jurisdiction, remand may occur without a motion and at any stage of the proceedings. *Wisc. Dep't of Corr.*

*v. Schacht*, 524 U.S. 381, 392 (1998); *Cascades Dev. of Minnesota, LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012). " 'If the district court concludes that it does not have subject matter jurisdiction, it must remand the case.' " *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1226-27 (8th Cir. 2015) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444-45 (8th Cir. 2010)).

Because of this precedent, and for the reasons discussed above, this case is remanded back to state court. Accordingly, it is ORDERED

1. Defendant's motion to dismiss (Docket 4) is denied.

2. Plaintiff's complaint (Docket 1) is REMANDED to Hughes County Small Claims Court and the clerk of this court shall mail a certified copy of this order to that Court.

Dated December 29, 2015.

BY THE COURT:

*/s/Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE